IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERTA HAMERICK, | ) | Civil No. 07-3089-CL |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| AQUA GLASS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PANNER, Judge.**

On February 20, 2008, Magistrate Judge Clarke filed his Report and Recommendation (R&R), which recommended granting the motion to arbitrate. Plaintiff timely objected  The matter is now before me for *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

With limited exceptions, federal law permits and even encourages voluntary agreements to arbitrate disputes. "It is 'this voluntariness' that provides the 'bedrock justification' from which arbitration derives its legitimacy as an alternative to the judicial system." LeLouis v. Western Directory Co., 230 F. Supp. 2d 1214, 1219 (D. Or. 2001).

"Voluntary" does not describe the arbitration agreement here. The parties did not negotiate a contract and mutually

1 - OPINION AND ORDER

agree they preferred to arbitrate any claims arising from their relationship.  Rather, Aqua Glass unilaterally imposed arbitration as a condition of being employed by the company.  The arbitration agreement encompasses not only claims brought by current or former employees, but even claims brought by unsuccessful job applicants.

As in Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 893 (9th Cir. 2002), "[t]he agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms . . . ."  In Adams, the Ninth Circuit refused to enforce the arbitration clause, finding it both procedurally and substantively unconscionable.

Under Oregon law, an arbitration agreement is not presumptively void merely because it is part of an adhesion contract.  Nevertheless, the circumstances under which the arbitration agreement was formed are relevant.  An arbitration clause that might survive if freely negotiated by the parties, may fail if unilaterally imposed by a party with superior bargaining power.  Procedural and substantive unconscionability are not entirely separate tests, but part of a single inquiry. See Carey v. Lincoln Loan Co., 203 Or. App. 399, 422 (2005) ("substantial disparity in bargaining power combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being

/ / / /
/ / / /
/ / / /

2 - OPINION AND ORDER

unconscionable"), *aff'd on unrelated issues*, 342 Or. 530 (2007).[1]

The challenged arbitration agreement contains provisions that unreasonably favor the employer who drafted it.  First, the contract effectively requires arbitration only of claims likely to be brought by an employee or applicant for employment, including:

> any claim under applicable state or federal law an employee within the United States might have against the Company, including, for example, all claims for: wages or other compensation due; breach of any contract; violations of public policy [aka "wrongful discharge claim"]; negligence; intentional torts; any alleged exception to the workers' compensation laws; all forms of unlawful discrimination including, but not limited to, race, color, sex, religion, national origin, disability, marital status or age; denial of fringe benefits; violation of any federal, state, or other governmental law, statute, regulation, or ordinance; and, any other matters arising under common or statutory law.  Disputes covered this policy shall also include any claim an employee might have against any officer, director, employee, or agent of the Company, or any of the Company's subsidiaries, divisions, and affiliates, if that claim in any way arises out of or relates to the employment relationship or the termination of the employment relationship.  It is the intent to submit to mediation and arbitration to the fullest extent permitted by law all disputes an employee might have against the Company and any of its subsidiaries, divisions, affiliates, officers, directors, employees, and agents.

---

[1] In that respect, Oregon law is not unlike California law. Cf. Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007) (California courts "apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa'") (quoting Armendariz v. Found. Health Psychcare Servs. Inc., 6 P.3d 669, 690 (Cal. 2000)).

3 - OPINION AND ORDER

"The only employee claims not covered by this Policy are those the employee might have for workers' compensation benefits pursued through a state administrative agency, unemployment compensation benefits, and claims under any of the Company's welfare benefit and pension plans."  These exceptions do not represent a concession on the employers' part.  An employer cannot legally compel arbitration of such claims.

At first glance, the arbitration agreement appears to apply equally to claims by employer and employee: "Except as noted below, the disputes covered by this Policy include any claim the Company might have against the employee."  On closer inspection, that mutuality proves illusory.  The exceptions cover the very kinds of claims most likely to be brought by an employer against a current or former employee:

> . . . [E]xempt from this Policy are claims for injunctive or equitable relief the Company might have against an employee to: enforce non-competition agreements; enforce non-solicitation agreements; protect, directly or indirectly, the Company's trade secret(s), proprietary information, confidential information and other Company property; and protect the Company's business reputation.

The net result is that the employer may seek relief in court for the claims that matter most to it, a right denied to the employee.[2]  Cf. LeLouis, 230 F. Supp. 2d at 1220 ("The

---

[2] The arbitration agreement purports to exempt from arbitration claims for "injunctive or equitable relief the Company may have against an employee."  It is unclear whether that would also exempt claims by the Company for damages based on the same events.  Otherwise, one part of the claim would be adjudicated in court, while the other part of the same claim might be decided by an arbitrator.  Alternatively, it could be argued that by seeking

(continued...)

4 - OPINION AND ORDER

arbitration agreement [defendants] forced upon LeLouis is one-sided.  LeLouis must submit all her claims to arbitration, but defendants are not obligated to arbitrate any claims they have against LeLouis.")

It is not only the forum that differs.  The severe restrictions this arbitration agreement places upon discovery, the shortened limitations period for some claims, the requirement to mediate any dispute first, and the other constraints this arbitration agreement imposes upon the employee, are declared inapplicable to claims of the kind likely to be brought by the employer.  Put another way, the employer is unwilling to have its own claims heard and decided under the same rules that apply to employee claims.

It is no answer that the arbitration agreement compels the employer to arbitrate any claims the employer theoretically might have against the employee for matters such as racial discrimination, unpaid wages, or wrongful discharge.  An employer almost certainly will never have any such claim.  Cf. Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or. App. 553, 569 (2007) ("Although the arbitration rider with majestic equality forbids lenders as well as borrowers from bringing class actions, the likelihood of the lender seeking to do so against its own

---

[2](...continued)
injunctive relief in court, the Company waives any claim for damages.  It also is not clear whether an action for declaratory relief, brought by a former employee to determine the rights of the parties or to enjoin the Company from interfering with the former employee's new business, would be heard by a court or arbitrator.  Ultimately, litigation might be necessary just to determine what claims may be litigated and where.

5 - OPINION AND ORDER

customers is as likely as the rich seeking to sleep under bridges.")[3]

Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862 (D. Or. 2002), is distinguishable. That action concerned a mortgage, not an employment contract. The cited passage also is dictum, since the Torrance court concluded there were other grounds for not enforcing the arbitration clause. In any event, the dearth of mutuality is not the only one-sided provision in the present arbitration agreement.

The arbitration agreement imposes severe restraints on discovery. Each side is limited to a single deposition, which must be taken at least thirty days prior to arbitration. Though appearing to provide for equal treatment, the single deposition rule strongly favors the employer. In the typical employment case, an employer has less need for depositions. The employee usually bears the burden of proof. She may need to probe behind the stated reasons for the challenged employment decision, or establish a pattern of disparate treatment or harassment. Persons with knowledge of the facts often are employees, officers, owners, or otherwise affiliated with the employer. The employer's attorney can generally question such persons without resorting to depositions. An employee (or former employee), lacking equivalent access to these individuals and documents, must rely upon subpoenas and depositions.

---

[3] "The law, in its majestic equality, forbids the rich as well as the poor to sleep under the bridges, to beg in the streets, and to steal bread." Anatole France, Le Lys Rouge, ch. VII (1894).

The Magistrate Judge correctly concluded that the discovery restrictions are impermissibly biased in favor of the employer. The Magistrate Judge then attempted to revise the contract for the parties, reasoning that "when a contract contains partly legal and partly illegal terms, the legal parts remain enforceable."  The authority cited for that proposition is a case concerning a franchise agreement, negotiated by sophisticated parties, that contained an invalid term which the court severed.

The present situation is distinguishable.  The issue here is not the legality of a particular provision of a contract negotiated by sophisticated parties, but whether one party used its superior bargaining power to impose one-sided terms on the other party.  "Aside from merely availing itself of the cost-saving benefits of arbitration, [defendant] has sought to advantage itself substantively by tilting the playing field." Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778, 787 (9th Cir. 2002).[4]

In LeLouis, Magistrate Judge Jelderks declined the employer's invitation to salvage the arbitration agreement by excising or rewriting the most onerous provisions:

---

[4] Plaintiff challenges other provisions in the arbitration agreement.  In resolving some issues, the R&R relied on concessions by defense counsel regarding what rights Plaintiff will have, and cited a decision that relied on a concession by counsel.  Post hoc concessions by counsel are immaterial in this circumstance, because the fairness of the agreement is evaluated as of the time of formation.  See LeLouis, 230 F. Supp. 2d at 1224-25; O'Melveny & Myers, 485 F.3d at 1079 (employer's concession cannot save unconscionable arbitration agreement by effectively rewriting it).

7 - OPINION AND ORDER

> [I]f I were to accept defendants' proposal, employers would have no incentive to ensure that a coerced arbitration agreement is fair to both sides. Instead, the employer could write a one-sided agreement that favors the employer, and then make the bare minimum modifications necessary to obtain the court's approval. Cf. Armendariz, 24 Cal. 4th at 124, n. 13, 99 Cal. Rptr. 2d 745, 6 P.3d at 697, n. 13 (employer will not be deterred from inserting illegal clauses in arbitration agreements if the worst that can happen is that the court will strike the offending clause after the employee has litigated the matter).

LeLouis, 230 F. Supp. 2d at 1225.

I have invoked similar reasoning in the context of a non-compete agreement imposed by an employer:

> The better approach is to void unreasonable agreements. See LeLouis v. Western Directory Co., 230 F. Supp. 2d 1214, 1224-25 (D. Or. 2001). If employers know that overreaching may result in the agreement being void, they will make sure, in drafting the agreement, that the terms are fair to both sides.

Konecranes, Inc. v. Sinclair, 340 F. Supp. 2d 1126, 1131 (D. Or. 2004). See also Vasquez-Lopez, 210 Or. App. at 577, n. 7 ("curing unconscionable contracts by severing the unconscionable provisions provides those who draft such contracts no disincentive to including such provisions in the first instance").

Voiding the arbitration agreement still leaves in place the underlying employment contract between the parties. Employment, not arbitration, was the primary object of their relationship.

/ / / /

/ / / /

/ / / /

8 - OPINION AND ORDER

## **Conclusion**

The Report & Recommendation (# 13) are adopted in part. Defendant's Motion (# 4) to Compel Arbitration is denied.

IT IS SO ORDERED.

DATED this 21st day of July, 2008.

                                /s/ Owen M. Panner
                                _____
                                Owen M. Panner
                                United States District Judge

9 - OPINION AND ORDER