IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ROBERTA HAMRICK,

Plaintiff,

v.

AQUA GLASS, INC.,

Defendant.

Civil No. 07-3089-CL

ORDER AWARDING
ATTORNEY'S FEES AND COSTS

CLARKE, Magistrate Judge:

Plaintiff Roberta Hamrick ("Plaintiff") has, pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988; and Or. Rev. Stat. 859A.885, filed a petition for attorney's fees and costs (Dkt. No. 42), following entry of judgment in her favor on claims for sexual harassment in violation of 42 U.S.C. § 2000e-2(a) and Or. Rev. Stat. § 659A.030; retaliation in violation of 42 U.S.C. § 2000e-3(a) and Or. Rev. Stat. § 659A.030; and wrongful discharge under state law.[1] Defendant Aqua Glass, Inc. ("Defendant") objects to Plaintiff's requests for fees and costs.

---

[1] Defendant asserts that Plaintiff voluntarily dismissed these claims because the statute of limitations had run. The judgment thus applies only to the federal claims. (Def.'s Objections to Pl.'s Pet. for Att'y Fees and Costs 11.)

Order Awarding Attorney's Fees and Costs - 1

For the reasons set forth below, the court awards Plaintiff **$46,513.87** which includes $45,008.70 in hourly attorney fees and $332.74 in taxable costs and $1,172.43 in non-taxable costs. With these provisions, Plaintiff's petition is granted. (Dkt. No. 42).

## I.  Background

Plaintiff filed her complaint against Defendant on November 8, 2007, in Klamath County Circuit Court alleging sexual harassment and retaliation, under both federal and state law, and wrongful discharge, under state law. Defendant removed the case to U.S. District Court on December 10, 2007. (Notice of Removal ¶ 1.)

Plaintiff's sexual harassment and retaliation claims are based allegations that an Aqua Glass manager touched her inappropriately and then disciplined her in retaliation for refusing to acquiesce to such conduct. Her wrongful discharge claim is based on an allegation that though she left work due to an injury she was unable to return due to the alleged harassment. (Notice of Removal, Ex. 2 ("Compl."), ¶¶ 8-19.)

On December 17, 2007, Defendant filed a motion to compel arbitration and dismiss the complaint. Magistrate Judge Mark D. Clarke recommended granting Defendant's motion, and Plaintiff objected. (Dkt. Nos. 13, 14.) District Court Judge Owen M. Panner did not adopt the recommendation and denied Defendant's motion on July 21, 2008. (Dkt. No. 17.) Defendant moved the court to reconsider on August 1, 2008. The court granted the motion to reconsider but adhered to its prior ruling to deny Defendant's motion. (Dkt. No. 21.)

On August 19, 2008, Defendant appealed the court's order to the Ninth Circuit. On September 18, 2009, the Ninth Circuit dismissed the appeal pursuant to the stipulations of voluntary dismissal made by the parties on September 16, 2009. (Dkt. Nos. 23 & 30.)

Order Awarding Attorney's Fees and Costs - 2

The parties participated in a settlement conference on September 11, 2009, in Eugene, Oregon. The settlement conference encompassed this case Hamrick v. Aqua Glass, 07-cv-3089-CL and a similar case Miller v. Aqua Glass, 07-cv-3088-CL, with a different plaintiff and same defendant. Attorney Craig Crispin was the lead counsel for both plaintiffs. However, at the settlement conference, Mr. Crispin represented Mr. Miller while Attorney David Schuck, also of Crispin Employment Lawyers, represented Plaintiff Hamrick. No settlement was reached for either case at that time. Plaintiff then proceeded with her civil action and began discovery. (Def.'s Objections to Pl.'s Pet. for Att'y Fees ("Def.'s Objections") 2-3.)

While written discovery was ongoing and before any depositions were taken, Defendant made an offer of judgment for $75,000, exclusive of attorney's fees and costs, on November 9, 2009. Plaintiff accepted the offer on November 20, 2009. Judgment was entered on November 23, 2009. A satisfaction of judgment was entered on February 2, 2010. (Dkt. No. 49.)

## II.   Calculation of Attorney Fees Under Title VII

Section 1988 of the U.S. Code, Title 42, provides: "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (internal citations omitted). "[F]ee awards must ensure that civil rights lawyers receive *reasonable* compensation for their services." Corder v. Gates, 947 F.2d 374, 378. "[T]he "reasonable" fee, as calculated by the district court, may fall short of the actual fee that the plaintiff's lawyer charges." Id. n. 3.

The Ninth Circuit has adopted a lodestar/multiplier approach for assessing the amount of reasonable attorneys' fees when an award is granted pursuant to a federal statute. D'Emanuele v.

Order Awarding Attorney's Fees and Costs - 3

Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990) (citing Hensley, 461 U.S. at 433-34 n. 9). See also Van Gerwen v. Guar. Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).

The lodestar/multiplier analysis is made up of two parts. First, the court calculates the lodestar amount by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).

To determine the lodestar amount, the court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir.1975).

The party seeking the award of fees must submit evidence to support the number of hours worked and the rates claimed. Van Gerwen, 214 F.3d at 1045. In addition, the party seeking an award of fees "has the burden to prove that the rate charged is in line with the 'prevailing market rate of the relevant community.'" Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir.2006) (quoting Guam Soc'y of Obstetricians & Gynecologists v. Ada, 100 F.3d 691, 696 (9th Cir.1996)). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.' "

Order Awarding Attorney's Fees and Costs - 4

Gerwin, 214 F.3d at 1045 (citation omitted).

Second, the court assesses whether it is necessary to adjust the lodestar upward or downward based on the Kerr factors that are "not already subsumed in the initial calculation of the lodestar." Morales, 96 F.3d at 363-64. "The lodestar amount is presumptively the reasonable fee, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." Van Gerwen, 214 F.3d at 1045 (citations and internal quotations omitted).

In addition, the court has an independent duty to review the Plaintiff's request for attorneys' fees for reasonableness. See Gates v. Deukmejian, 987 F.2d 1392, 1401 (9th Cir.1993).

Plaintiff seeks an award of $67,823.12. This includes $57,053 for attorney fees, $1,630.12 for costs, and $9,140 for recoverable time preparing the fee petition.

## III.  Calculating the Lodestar Amount

The court must determine the reasonable hourly rate for Plaintiff's counsel and determine the hours reasonably expended on litigation.

A reasonable hourly rate is determined by looking at the prevailing rate in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation. See Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir.1997); see also, Welch v. Metro. Life Ins. Co. 480 F.3d 942 (9th Cir. 2007). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir.

Order Awarding Attorney's Fees and Costs - 5

1987). "[T]he general rule is that the rates of attorneys practicing in the forum district . . . are used" Gates, 987 F.2d at 1405.

In Oregon, the Economic Survey conducted by the Oregon State Bar is the "initial benchmark" for determining a reasonable rate. "Message From The Court Regarding Attorney Fee Petitions," available at http://ord.uscourts.gov. The *2007 Oregon State Bar Economic Survey* ("*2007 Oregon Survey*") is broken down by area of the state and years of experience. Available at http://www.osbar.org/_docs/resources/07EconSurvey.pdf. "Attorneys may argue for higher rates based on inflation, specialty, or any number of factors." Id.

Only hours reasonably expended are considered in the lodestar calculation. As the United States Supreme Court explained,

> [t]he district court . . . should exclude from this initial fee calculation hours that were not reasonably expended. Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

Hensley, 461 U.S. at 434 (citations omitted).

### A.  Reasonable Hourly Rates for Plaintiff's Attorneys

The parties disagree as to reasonable hourly rates. In this case, the forum district is the District of Oregon. As plaintiff's attorneys practice predominantly in Portland, the court uses the Portland-region rate as the prevailing market rate.

The average billing rates for Portland attorneys with similar experience as Plaintiff's

Order Awarding Attorney's Fees and Costs - 6

counsel are as follows:[2]

    21-30 years:    average of $277; median of $275

    16-20 years:    average of $267; median of $275

    10-12 years:    average of $235; median of $250

    0-3 years:    average of $177; median of $180

*2007 Oregon Survey* 27-28.

Plaintiff's attorneys seek rates that are predominantly higher than the average rates for attorneys of similar years of experience:

| Attorney | Rate |
|---|---|
| Craig Crispin (28 years): | $425 |
| Shelly Russell (16 years): | $335 |
| Patty Rissberger (22 years): | $335 |
| Iayesha Smith (3 years): | $200 |
| Amy Segal[3] (20 years): | $250 |
| David Schuck (11 years): | $275 |
| Allison Lesh (law clerk): | $150 |
| Jackie Burnett (paralegal): | $125 |
| Legal Assistants: | $95 |

(Decl. of Craig A. Crispin in Supp. of Pl.'s Pet. for Att'y Fees and Costs ("Crispin Decl. in Supp.") 2-12.)

---

[2] The survey compiled the average and median hourly billing rates by total years admitted to practice It also included the rates which were at the 25th, 75th, and 95th percentile of reported hourly rates.

[3] Rates for Ms. Segal and the legal assistants are the only rates on which both parties agree.

Order Awarding Attorney's Fees and Costs - 7

Defendant argues that these rates are not reasonable and suggests the following:

| | |
|---|---|
| Craig Crispin (28 years): | $325 |
| Shelly Russell (16 years): | $290 |
| Patty Rissberger (22 years): | $290 |
| Iayesha Smith[4] (3 years): | $130 |
| Amy Segal (20 years): | $250 |
| David Schuck (11 years): | $275 |
| Allison Lesh (law clerk): | $125 |
| Jackie Burnett (paralegal): | $100 |
| Legal Assistants: | $95 |

(Def.'s Objections to Pl.'s Pet. for Att'y Fees and Costs ("Def.'s Objections") 8.)

With a few exceptions, the court agrees with Defendant. Plaintiff has not shown that her requested rates are reasonable.

First, Plaintiff asserts that $425 is Mr. Crispin's market rate, which he defines as "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for their work in question." (Mem. in Supp. of Pl.'s Petition for Attorney Fees and Costs ("Mem. in Supp.") 7.) This rate, Plaintiff asserts, is "established in a competitive free economy", and thus "the hourly rate of $425 is reasonable." (Mem. in Supp. 7.)

The court disagrees that his market rate is reasonable, relying instead on the *2007*

---

[4] The *2007 Oregon Survey* provides separate data for attorneys in 0 to 3 years of experience and in the 4 to 6 years of experience. At the beginning of the litigation Ms. Smith was in the former group, while at the writing of this order, Ms. Smith is in the latter group. Ms. Smith was admitted to the Oregon State Bar in 2004. When she billed her hours, she had three years of experience. The court uses the 0 to 3 years of experience group as its guiding benchmark in setting her hourly rate.

Order Awarding Attorney's Fees and Costs - 8

*Economic Survey* as guidance, as previously explained, for what is reasonable. Moreover, Plaintiff offers no other justification for a $425 hourly rate, which is well over the average prevailing rate for attorneys in the Portland community. This proposed rate is above the 95th percentile of reported fees of attorneys with similar experience, according to the *2007 Oregon Survey*. Most of the hourly rates proposed by Plaintiff also exceed the average for attorneys in the relevant community.

Second, Plaintiff has not shown that the circumstances surrounding the delayed payment here should impact the reasonable rate determination. Plaintiff references <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1984), in which the court noted, "[a]n adjustment for delay in payment is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988." 284. Plaintiff explains, "[f]ailure to afford plaintiffs' counsel appropriate compensation for delay effectively devalues the market rates to which plaintiffs' counsel are entitled." (Mem. in Supp. 6.)

Plaintiff's case, however, is distinguishable from <u>Jenkins</u> in which the court recognized that the "delay, coupled with the fact that . . . the attorney's *expenses* are not deferred pending completion of the litigation" caused considerable hardship on counsel. "During a period of nearly three years, the demands of this case precluded attorney [] from accepting other employment. In order to pay his staff and meet other operating expenses, he was obliged to borrow." <u>Jenkins,</u> 491 U.S. at 284 n. 6.

Here, Plaintiff provides no specific examples of any hardship that her counsel experienced. Rather, she abstractly states, "[t]his devaluation could impose a hardship on plaintiffs' counsel who have foregone compensation for many years, and could deter capable

Order Awarding Attorney's Fees and Costs - 9

attorneys from undertaking meritorious but protracted civil rights cases like this, thereby defeating the legislative purpose in enacting fee-shifting provision in employment discrimination statutes." (Mem. in Supp. 6.)

Third, the court is not convinced that inflation warrants Plaintiff's higher-than-average rates. Plaintiff's attorneys billed past work, beginning in 2006, at 2010 rates. For example, Mr. Crispin's first reported hour was dated September 28, 2006 for a telephone call with Plaintiff to discuss her claim and injuries. This was billed at $425, the 2010 rate. Plaintiff argues that the rates are reasonable because they include an increase for inflation for work performed in previous years. "[P]laintiff requests that any award include an appropriate interest factor to account for delay in payment. . . . These increases represent an increase of approximately 3% per year." (Mem. in Supp. 6, n. 2.)

While using current rates for past work performed is one avenue to account for inflation, such an adjustment is not required in every case. As the court in Jordan explained,

> [t]he use of current rates is one method of compensating for the effects of inflation, and may be required if the effects of inflation would otherwise render the fee award unreasonable. Suzuki v. Yuen, 678 F.2d 761, 763 (9th Cir.1982) Adjustment for inflation is not required in every case, however; the question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment. Clark v. City of Los Angeles, 803 F.2d 987, 992-93 (9th Cir.1986).

Jordan, 815 F.2d at 1263 n.7. Plaintiff has not shown such an adjustment is warranted here.

Fourth, the court does not believe that higher-than-average rates are justified simply because Plaintiff's attorneys represented Plaintiff on a contingency basis. She argues, "enhancement of the award based on contingency is warranted under state law." (Mem. in Supp. 5.)

Order Awarding Attorney's Fees and Costs - 10

For support, Plaintiff cites <u>Griffin v. Tri-County Metropolitan Transportation District of Oregon</u>, 831 P.2d 42 (Or. App. 1992), but again, this is distinguishable from her case. In <u>Griffin</u>, the Oregon Court of Appeals upheld an enhanced rate proposed in the fee petition. The attorney had presented evidence that the complex, controversial litigation presented risks for the attorney and that the attorney had been deprived of other business opportunities by representing the case. <u>Id.</u> at 47-48. Here, Plaintiff has made no showing that her attorneys were deprived of opportunities or that representing Plaintiff was a risk out of the ordinary. Enhancement is not warranted.

Fifth, and lastly, Plaintiff suggests that the current 2010 rates are reasonable and warranted because "Plaintiff's attorney's rates were below market rates." (Mem. in Supp. 6.) Plaintiff's argument is puzzling and unpersuasive. It appears that Plaintiff's attorneys are arguing that while they can bill their clients at below market rates, the court should increase their rates when they are awarded attorney's fees. Such a proposition is inimical to the underlying policy of fee awards in civil rights cases. See <u>Johnson v. Georgia Highway Exp., Inc.</u>, 488 F.714, 719-720 (5th Cir. 1974) ("The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation.").

Further, Plaintiff does not present any evidence that the rates were below market. Mr. Crispin's "historical rates" cited in footnote 2 (on the very same page as the "below market rate" argument) clearly establish that these rates are above the $277 average, as set forth in the *2007 Oregon Survey*. His rates were $325 from January 2007 to August 2007, $345 from September 2007 to July 2008, and $365 from July 2008 to December 2009. (Mem. in Supp. 6.)

Order Awarding Attorney's Fees and Costs - 11

The court finds Defendant's proposed rates reasonable and thus adopts them for its calculation of the lodestar amount, with the exception of the rate for Ms. Iayesha Smith. According to the *2007 Oregon Survey*, Defendant's proposed rates are either consistent with Plaintiff's proposed rates, as in the case of Ms. Segal and legal assistants, or are above the average and median rates in the prevailing legal community for other attorneys with their respective experience.

As to Ms. Smith, the court finds a reasonable rate of $188 which is slightly above the average rate of $177 for attorneys with 0 to 3 years of experience in the prevailing community. Accordingly, that rate will be applied rather than the Defendant's proposed $130 rate or the Plaintiff's proposed $200 rate in the lodestar calculation.

In sum, after considering all the information presented by the parties and all other relevant factors, including those set forth in Kerr, 526 F.2d at 70, the court finds the following reasonable hourly rates:

| | |
|---|---|
| Craig Crispin (28 years): | $325 |
| Shelly Russell (16 years): | $290 |
| Patty Rissberger (22 years): | $290 |
| Iayesha Smith (3 years): | $188 |
| Amy Segal (20 years): | $250 |
| David Schuck (11 years): | $275 |
| Allison Lesh (law clerk): | $125 |
| Jackie Burnett (assistant): | $100 |
| Legal Assistants: | $95 |

Order Awarding Attorney's Fees and Costs - 12

### B.     Hours Reasonably Expended

Defendant objects to several hours billed by Plaintiff's attorney and asks the court to exclude this time from its fee calculation. These include hours for clerical tasks, hours related to the Miller v. Aqua Glass litigation, hours for state law claims, and hours on the fee petition. (Def.'s Objections 8.)   Plaintiff disagrees.

#### 1.     Hours Expended on Clerical Tasks

Plaintiff's attorneys billed several hours that Defendant characterizes as "clerical tasks." These hours include time spent ordering files, downloading documents, updating addresses, and making travel arrangements. (Def.'s Objections 8.)

In response, Plaintiff argues,

> Mr. Crispin and the other two attorneys in the firm often complete our own travel arrangements and conduct varied small but necessary tasks because it is more efficient and cost effective for us to do so than to delegate those tasks and spend time explaining what is needed to our secretarial/paralegal staff. Handling such tasks ourselves actually reduces the time and cost to our clients.

(Pl.'s Reply to Def.'s Objections to Att'y Fees and Costs ("Pl.'s Reply") 5.)

The court disagrees.  Clerical costs are typically considered overhead expenses that are reflected in the hourly billing and are not reimbursable. Galdamez v. Potter, 2007 WL 1541739 *2 (D. Or.); see Jenkins, 491 U.S. at 388 n. 10.

The court reduces the total hours billed by Mr. Crisipin:

    08/21/07:     .1    (order BOLI files)

    02/17/08:     .2    (download reply brief from ECF)

    03/19/08:     .1    (download reply brief from ECF)

    07/21/08:     .5    (download reply brief from ECF)

Order Awarding Attorney's Fees and Costs - 13

| | |
|---|---|
| 06/05/09: | .2 (notice re: change of address) |
| 06/09/09: | .1 (update change of address w/ 9th Cir.) |
| 10/10/10: | .3 (travel arrangements) |
| 10/17/10: | .6 (travel arrangements) |
| 10/19/10 : | .3 (travel arrangements) |

    Total = 2.4 hours

The court also reduces the hours billed by Ms. Smith by .2 for the following work:

| | |
|---|---|
| 02/12/07: | .2 (emails about BOLI files with asst) |

    Total: .2 hours

### 2. Hours Expended Related to Miller v. Aqua Glass

Defendant also objects to time related to the Miller v. Aqua Glass litigation that Mr. Crispin billed to Ms. Hamrick. For instance, at the 2009 settlement conference regarding both Ms. Hamrick and Mr. Miller's claims against Aqua Glass, Mr. Crispin represented Mr. Miller, and Mr. Schuck represented Ms. Hamrick. (Def.'s Objections 9.) Both attorneys billed Ms. Hamrick for this time.

Defendant points to the following entries:

| | |
|---|---|
| 12/14/07: | 1.4 (legal research on Miller matter, billed by Ms. Smith) |
| 02/04/09: | .1 (email matter to Ms. Segal re: Miller, billed by Ms. Burnett) |
| 09/10/09: | .6 (phone call about mediation procedure to prepare for mediation billed by Mr. Crispin) |
| 09/11/09: | 12 (travel to Eugene for mediation, mediation, abd return travel; billed by Mr. Crispin) |

Order Awarding Attorney's Fees and Costs - 14

09/11/09:       .3 (OJIN search w/ Hobach Law Firm re: Miller; billed by Ms. Russell)

In her reply, Plaintiff concedes that only 1 hour was improperly billed to Hamrick. "Mr. Crispin notes that the entry for Iayesha Smith, dated December 14, 2007 does appear to be an entry for which one hour should be divided between the Miller and Hamrick cases, the remainder is appropriately allocated to this case."

However, regarding the remaining time, Plaintiff argues, "[a]lthough Mr. Crispin was not serving as Ms. Hamrick's lead counsel on that day, he was involved in discussions of case strategy, evaluation of offers made, and negotiation strategy along with Mr. Schuck." (Pl.'s Reply 5; see also Decl. of Craig Crispin in Support of Pl.'s Reply ("Crispin Decl. in Reply") ¶ 14.)

The court disagrees with Plaintiff. These 13 hours related to the settlement conference were not reasonably expended for Hamrick's case. These hours (allocated between Mr. Crispin, Ms. Russell, and Ms. Burnett) will be excluded as will 1 hour billed by Ms. Smith.

### 3. Hours Expended on Dismissed Oregon State Law Claims

Defendant also objects to any fees incurred in connection with Plaintiff's Oregon statutory claims.

> [D]espite having allowed the statute of limitations to run on plaintiff's state statutory claims, plaintiff's attorneys nonetheless pursued those claims in court. It is indisputable that plaintiff had to voluntarily dismiss her state statutory claims after defendant advised her attorney that her lawsuit was filed after the statute of limitation had run. Defendant is unable to discern from plaintiff's vague descriptions on her petition what work is attributable to plaintiff's pursuit of her untimely state statutory claims. To the extend that plaintiff's counsel seeks compensation for work performed on her time-barred state statutory claims, those charges should be stricken from the petition.

(Def.'s Objections 11.) Plaintiff contends, however, that apportionment is not necessary because of the commonality between federal and state claims here. She explains that the Oregon statutory

Order Awarding Attorney's Fees and Costs - 15

claims are identical to her federal claims with respect to facts, legal issues, and evidence analyzed, gathered and compiled for litigation. "Dismissal of the state statutory claims therefore has no effect on the amount of plaintiff's fee petition." (Pl.'s Reply 4.)

"Attorney fees need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not." Greb v. Murray, 795 P.2d 1087, 1088 (Or. App. 1990) (quoting Sunset Fuel & Engineering Co. v. Comptom, 775 P.2d 901, 904 (Or. App. 1989). Here, the federal and state claims arise from the same facts and involve the same issue of sexual harassment and its damages  Accordingly, apportionment is not necessary and the hours expended on state law claims are not excluded.

### 4. Hours Expended on the Fee Petition

Plaintiff's attorneys billed nearly 27 hours for the preparation of Plaintiff's fee petition. While the court generally agrees that hours expended preparing the fee petition may be awarded, Plaintiff has not claimed reasonable hours here.

As a result, the court finds the following amounts reasonable for preparing the petition, billed by Mr. Crispin at the $325 hourly rate:

1.0     Review, revise, and edit billing history

4.0     Prepare petition for fees and costs and accompanying declarations

3.0     Review Defendant's objections to petition and prepare reply

Total = 8.0

### C.     Lodestar Calculation

Accordingly, based on the foregoing, the court awards $45,008.70 for hours reasonably expended on Plaintiff's litigation and preparation of the fee petition.

Order Awarding Attorney's Fees and Costs - 16

| | | | | | | |
|---|---|---|---|---|---|---|
| Craig Crispin: | $325 | x | 63.9 hrs. | = | $20,767.50 |
| Shelly Russell: | $290 | x | 6.8 hrs. | = | $1,972.00 |
| Patty Rissberger: | $290 | x | 6.3 hrs. | = | $1,827.00 |
| Iayesha Smith: | $188 | x | 23.9 hrs. | = | $4,493.20 |
| Amy Segal: | $250 | x | 25.5 hrs. | = | $6,375.00 |
| David Schuck: | $275 | x | 13.4 hrs. | = | $3,685.00 |
| Allison Lesh: | $125 | x | 13.5 hrs. | = | $1,687.50 |
| Jackie Burnett: | $100 | x | 12.5 hrs. | = | $1,250.00 |
| Legal Assistants | $95 | x | 3.7 hrs. | = | $351.50 |
| Hours for Fee Pet. | $325 | x | 8.0 hrs. | = | $2,600.00 |
| | | | Total | = | **$45,008.70** |

### III. Part Two: Whether to Adjust the Lodestar

Courts may adjust the lodestar amount up or down when appropriate. "The court may adjust the lodestar: (1) downward if the plaintiff has achieved only partial or limited success or if the fee is otherwise unreasonable, . . . or (2) upward in "rare" and "exceptional" cases. . . . However, there is a presumption that the lodestar figure represents a reasonable fee." Galdamez v. Potter, 2007 WL 845914 *2 (D. Or.) (internal citations omitted).

There are no circumstances here that would warrant adjusting the lodestar amount.

### IV. Costs Awarded

Plaintiff asks for $1,630.12 in costs. Federal Rule of Civil Procedure 54 explains that the prevailing party should be allowed costs. Under 28 U.S.C. § 1920, an attorney requesting costs is required to file a bill of costs. The bill must be verified: "[b]efore any bill of costs is taxed,

Order Awarding Attorney's Fees and Costs - 17

the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." 28 U.S.C. § 1924.

Though Plaintiff's attorney did not submit a traditional bill of costs, his petition is sufficient. Mr. Crispin made the declaration: "The costs set forth therein are true and accurate costs billed to plaintiff and necessarily incurred in the prosecution of this matter." (Crispin Decl. in Supp. ¶ 46.)

Costs are classified as either taxable costs or non-taxable costs.

### A. Taxable Costs

Pursuant to Rule 54(d), the court may tax specific items as costs against a losing party as stated in 28 U.S.C. §§ 1920 and 1821. Twentieth Century Fox Film Corp. v. Entm't Distrib., 429 F.3d 869, 885 (9th Cir. 2005) (citing Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445 (1987)). The court has broad discretion to allow or to disallow a prevailing party to recoup costs of litigation, but the court may not tax costs beyond those authorized by § 1920. See Frederick v. City of Portland, 162 F.R.D. 139, 142 (D. Or. 1995).

Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Order Awarding Attorney's Fees and Costs - 18

28 U.S.C. § 1920.

Here, Plaintiff submitted taxable costs, which included the costs for the BOLI file and filing fee for the State of Oregon, for a total of $332.74, and Defendant has made no objection. The court notes that Plaintiff has submitted several costs for photocopies; however, there is no indication that these were "necessarily obtained for use in the case" and thus they are not within § 1920.

These costs for the BOLI files and filing fee are reasonable and within the parameters of § 1920. They will be awarded in full.

### B.    Non-taxable Costs

Federal law grants the federal court the discretion to award the prevailing party a reasonable attorney's fee as part of the costs. 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988(b). "Congress has mandated that a prevailing party's attorney should be compensated as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended in a matter." Thornberry v. Delta Air Lines, Inc., 676 F.2d 1240, 1244 (9th Cir. 1982) (quoting Northcross v. Bd. of Educ., 611 F.2d 626 (6th Cir. 1979)).

Out-of-pocket expenses and other costs, which are not recoverable as taxable costs under 42 U.S.C. § 1920 but are typically charged to a fee-paying client, may be allowed by the court as part of an attorney's fee award under 42 U.S.C. § 2000e-5(k). Davis v. City of San Francisco, 976 F.2d 1536, 1556 (9th Cir. 1992) (Title VII employment discrimination case), vacated in part by 984 F.2d 345 (9th Cir. 1993); see Harris v. Marhoefer, 24 F.3d 16, 19-20 (9th Cir. 1994) (42 U.S.C. § 1983 civil rights case warranting attorney's fee award pursuant to § 1988). "Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to

Order Awarding Attorney's Fees and Costs - 19

the statutory authority of Section 1988." <u>Northcross</u>, 611 F.2d at 639.

Plaintiff proposes $1,297.38[5] in non-taxable costs. Defendant objects to several of Plaintiff's proposed costs. Plaintiff's attorney, however, asserted in his declaration that these costs accurately reflect those incurred in Plaintiff's representation. Defendant has given no reason to discredit Plaintiff's attorney, and the court finds these costs reasonable.

However, consistent with the reasons outlined above regarding hours billed for representation of Mr. Miller at the 2009 settlement conference, the court will exclude costs that Mr. Crispin attributed to his representation of Mr. Miller at that time. This includes mileage for Mr. Crispin of a total $64.95 and OJIN search fees of $60.00. The non-taxable costs award is reduced by $124.95 for a total of $1,172.43.

## V.    ORDER

Based on the foregoing, Plaintiff is awarded **$46,513.87** in attorney's fees, which includes $45,008.70 in hourly fees for representation and preparing the fee petition and $332.74 in taxable costs and $1,172.43 in non-taxable costs. With these provisions, Plaintiff's petition is granted. (Dkt. No. 42).

IT IS SO ORDERED.

DATED this 12 day of March, 2010.

_____
Mark D. Clarke
United States Magistrate Judge

---

[5] Plaintiff claims a total of $1,630.12 in costs. Reducing the total by taxable costs of $332.74, the court calculated the non-taxable costs of $1,297.38.

Order Awarding Attorney's Fees and Costs - 20